IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 5:23-cr-118-01-JDW |
| | : | |
| **v.** | : | |
| | : | |
| **VICTOR GARCIA-RIVERA** | : | |

### MEMORANDUM

Victor Garcia-Rivera seeks dismissal of his two-count indictment, arguing that the charges infringe his Second Amendment rights. However, because the Government has carried its burden of proving that dispossessing Mr. Garcia-Rivera of a firearm is consistent with the Nation's history of gun regulation, I deny his Motion.

### I.     BACKGROUND

On February 21, 2022, Lancaster Police Officers observed a car in which Mr. Garcia-Rivera was the passenger partially block an intersection, so they conducted a traffic stop. During the stop, the officers found two guns, drugs, and large sums of cash. As a result, a grand jury indicted Mr. Garcia-Rivera on two counts: a violation of 18 U.S.C. § 924(c) (possession of a firearm during a drug trafficking offense); and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). (*See* ECF No. 1.)

In 2011, Mr. Garcia-Rivera was convicted of burglary in Puerto Rico and received a sentence of 18 months' imprisonment. In 2015, he was convicted of possession of a firearm by a felon and received a sentence which included imprisonment and supervised release. Now, he seeks dismissal of both counts of his indictment, arguing that the

charges are unconstitutional as applied to him after the Supreme Court's decision in *Bruen* and the Third Circuit's decision in *Range*. *See New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022); *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023). The Government responded, and the Motion is ripe for disposition.

## II.   ANALYSIS

The Second Amendment provides that a "well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." In *Bruen*, the Supreme Court held that for the government to justify a firearm regulation, it "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. In applying *Bruen*, courts use a two-step framework. First, a court "decide[s] whether the text of the Second Amendment applies to a person and his proposed conduct." If the answer is yes, "the government now bears the burden of proof: it 'must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms.'" *Range*, 69 F.4th at 101 (citing *Bruen*, 597 U.S. at 19).

### A.   Section 924(c)

Neither *Bruen* nor *Range* supports dismissal of the § 924(c) charge. Rather, the opposite. "*Bruen* . . . supports the conclusion that possession of a firearm in furtherance of a drug crime is not covered by the text of the Second Amendment." *United States v. Cash*, No. 22-2713, 2023 WL 6532644, at *3 (3d Cir. Oct. 6, 2023) (addressing a *Bruen-*

style challenge to § 924(c)). I follow other courts that have "rejected Second Amendment challenges to § 924(c)" because the Second Amendment doesn't protect the right to possess a firearm for an unlawful purpose. *Id.* (citing cases).

### B. Section 922(g)(1)

Unlike Section 924(c), Section 922(g)(1) regulates possession of a firearm, conduct that the Second Amendment protects. In *Range*, plaintiff Bryan Range argued that § 922(g)(1) was unconstitutional as applied to him, an individual with a twenty-eight-year-old misdemeanor conviction for making a false statement to obtain food stamps. *See Range*, 69 F.4th at 98. The Third Circuit held that the government didn't meet "its burden of showing that our Nation's history and tradition of firearm regulation support[ed] disarming Range." *Id.* at 98. But the Circuit cautioned that its holding in *Range* was a "narrow one." *Id.* at 106. In a concurring opinion, Judge Ambro reiterated this sentiment and explained that the decision "speaks only to [Range's] situation, and not to those of murderers, thieves, sex offenders, domestic abusers, and the like." *Id.* at 110 (Ambro, J., concurring). Most district court judges facing a constitutional challenge to § 922(g)(1) since have declined to extend *Range* beyond its facts. *See, e.g.*, *United States v. Santiago*, No. 5:23-CR-00148, 2023 WL 7167859, at *3 (E.D. Pa. Oct. 31, 2023); *United States v. Brown*, No. 20-260, 2023 WL 7021181 (E.D. Pa. Oct. 25, 2023); *United States v. Bost*, No. 2:21-CR-30-CCW, 2023 WL 7386567, at *2 (W.D. Pa. Nov. 8, 2023); *United States v. Cotton*, No. CR 22-471, 2023 WL 6465836, at *4 (E.D. Pa. Oct. 4, 2023).

At the second step of *Bruen*, to carry its burden, the Government must identify a historical analogue for the current restriction. *See Bruen*, 597 U.S. at 30. That analogue need not be a "historical twin." *Id.* But it must show that "modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Id.* at 29.

Other judges within the Third Circuit have held that the same historical record that the Government presents to me satisfies the government's burden. *See, e.g., United States v. Hedgepeth*, No. CR 22-377-KSM, 2023 WL 7167138, at *5 (E.D. Pa. Oct. 31, 2023) (reviewing regulations from the pre-Founding era through Reconstruction); *United States v. West*, No. CR 23-132, 2023 WL 8091984, at *3 (E.D. Pa. Nov. 21, 2023) (same). Those analyses, which conclude that early regulations targeted "groups that lawmakers deemed dangerous and disruptive to society," are persuasive. *United States v. Reichenbach*, No. 4:22-CR-00057, 2023 WL 5916467, at *7 (M.D. Pa. Sept. 11, 2023).

Mr. Garcia-Rivera's burglary and unlawful possession convictions place him in a category of people where there is "reasonable cause to fear an injury, or breach of the peace." *Bruen*, 597 U.S. at 56 (quoting Mass. Rev. Stat., ch. 134, § 16 (1836)). Burglary has an "inherent potential for harm to persons," given the possibility that a "violent confrontation" could erupt between burglar and occupant. *Taylor v. United States*, 495 U.S. 575, 588 (1990). Mr. Garcia-Rivera's prior criminal conviction of unlawfully possessing a firearm "demonstrates, at the very least, that he has a history of disobeying

4

firearm regulations specifically designed to protect public safety." *Cotton*, 2023 WL 6465836, at *4 (evaluating a *Range*-style challenge to a § 922(g)(1) conviction).

Other judges confronting similarly situated defendants agree. *See, e.g.*, *United States v. Johnson*, No. CR 23-77, 2023 WL 6321767, at *3 (E.D. Pa. Sept. 27, 2023) ("Johnson's prior convictions are for unlawfully carrying firearms and receiving stolen property . . .Those convictions indicate that he presents a potential danger to society and cannot be trusted to obey firearm regulations."); *Santiago*, 2023 WL 7167859, at *3 (burglary of a pharmacy and possession of stolen firearms).

Given these facts, I have little problem concluding that Mr. Garcia-Rivera is the type of person that traditional regulations would have dispossessed of a firearm. *See United States v. Benson*, No. CR 22-225, 2023 WL 8373161, at *4 (E.D. Pa. Dec. 4, 2023) (explaining that "wherever the outer bound of our nation's historical tradition of firearm regulation lies, disarming those deemed to be dangerous . . . comfortably falls within the record").

### III.    CONCLUSION

Section § 922(g)(1) was unconstitutional as applied to Bryan Range, but Mr. Garcia-Rivera's more extensive history makes him different. I conclude that the charges as applied to Mr. Garcia-Rivera don't infringe his Second Amendment rights, so I will deny his Motion to dismiss the indictment. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
Joshua D. Wolson, J.